UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 08-44-GWU

| | |
|---|---|
| BRENDA JONES, | PLAINTIFF, |
| VS. | **MEMORANDUM OPINION** |
| MICHAEL J. ASTRUE,<br>COMMISSIONER OF SOCIAL SECURITY, | DEFENDANT. |

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her application for Disability Insurance Benefits (DIB). The appeal is currently before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

08-44  Brenda Jones

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

> whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Brenda Jones, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment due to Buerger's disease. (Tr. 17). Nevertheless, based in part on the testimony of a Vocational Expert (VE), the ALJ determined that Mrs. Jones retained the residual functional capacity to perform jobs existing in the economy, and therefore was not entitled to benefits. (Tr. 19-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ asked the VE whether a person of the plaintiff's age of 46, high school education, and work experience as a kitchen supervisor, kitchen helper, insurance agent, and cashier could perform any jobs if she were limited to "sedentary" level exertion, with the requirement of sitting or standing at will and no exposure to temperature extremes or pulmonary irritants, including dust, fumes, or noxious odors. (Tr. 378-9). The VE responded that there were jobs that such a person could perform, including small products assembler,

08-44 Brenda Jones

production laborer, and small products inspector, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 380).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The plaintiff alleged disability due to Buerger's disease, a condition which she claimed caused the blood vessels in her body to become inflamed, resulting in impairment of circulation.[1] (Tr. 70). The problem affected her legs, and she also described separate blood pressure problems. The plaintiff stated at the June 13, 2006 administrative hearing that her condition had been diagnosed approximately ten years earlier but she had continued working until early 2005. (Tr. 343, 352). She took the blood pressure medication Accupril to expand her arteries so blood could circulate, and reported no side effects. (Tr. 352-3). However, she claimed to have had a heart attack in December, 2005, for which she was recently taking nitroglycerin to prevent chest pains. (Tr. 353-5). Her cardiologist, Dr. Patel, had limited her from lifting over ten pounds. (Tr. 355-6). She related a number of physical difficulties to Buerger's disease, including passing blood from her bowels, which had required an iron "transfusion," difficulty breathing in temperature

---

[1] Buerger's disease, also known as thromboangiitis obliterans, is defined as "an inflammatory and obliterative disease of the blood vessels of the extremities, primarily the lower extremities, occurring chiefly in young men and leading to ischemia of the tissues and gangrene." Dorland's Illustrated Medical Dictionary, 27th Ed., p. 1717.

extremes or around odors, frequent episodes of passing out, difficulty sitting, standing, and walking (Tr. 369-71), and headaches (Tr. 373).

Initially, it should be noted that there is no medical evidence in the transcript of a heart attack or of any restrictions from a Dr. Patel.  The plaintiff was evaluated by her family physician, Dr. Mark Adams, in late 2005 and early 2006 for chest pain, but an electrocardiogram showed no acute changes and a follow-up stress test was abnormal only to the extent that it showed non-specific changes.  (Tr. 325-9).  In any event, the ALJ limited the plaintiff to lifting no more than ten pounds, which she testified was the only restriction her cardiologist had provided.  (Tr. 355-6).

Other records in the transcript include 1998 reports from physicians at the Mayo Clinic indicating a discovery of "structural arterial disease." (Tr. 134).  The plaintiff continued to work, however.  An office note from Rebecca Kraftick, a physician's assistant in Dr. Adams's office, is dated March 21, 2005 (Tr. 156), the month the plaintiff stated she last worked (Tr. 375).  The note reflects a complaint that Mrs. Jones felt like she was going to pass out, but just got dizzy and weak.  (Tr. 156).  She had been off her Accupril for three days.  The examination showed slightly diminished pulses in the ankles, and a significant amount of skin changes secondary to Buerger's syndrome.  It was recommended that she restart the medication to help with her circulation.  (Id.). The most recent previous examination

from Dr. Adams himself, on October 2, 2004, showed complaints of low back pain, but it was noted that she was "basically doing well." (Tr. 158).

Other medical notes from early 2005 showed that the plaintiff was seen on three occasions by a podiatrist, Paul K. Krestik, for pain in her right foot. X-rays showed no fracture, and she had a corn removed, after which it was noted she was doing much better and was advised to come back to the office only as needed "since she's doing so well." (Tr. 268-72). Perhaps not surprisingly, a state agency physician who reviewed the record at this point felt that the plaintiff did not even have a "severe" impairment. (Tr. 304).

The plaintiff points to a residual functional capacity assessment form completed on September 1, 2005 and signed, apparently in the same handwriting, by Rebecca Kraftick as well as Mark Adams, which limits the plaintiff to less than full-time sitting, standing, and walking in addition to stating that her legs should be elevated 75 percent of the time, and placing significant limitations in repetitive reaching, handling, and fingering due to poor circulation. The reports also cites a need to completely avoid temperature extremes. Her diagnosis is given as Buerger's syndrome, anemia, and hypotension resulting in decreased peripheral pulses, low back pain, and extensive skin changes. (Tr. 306-9). Clearly, this assessment would preclude full-time work activity. The Commissioner points out, however, that the signature of Dr. Adams on the report is not the same as his

signature elsewhere (compare Tr. 310 with Tr. 155, 312).  A physician's assistant is not an acceptable medical source under 20 C.F.R. § 404.1513.  The ALJ assumed that Rebecca Kraftick was presumably reporting Dr. Adams's opinions, but gave them little weight because he felt that the limitations to sitting or standing no more than ten minutes were not consistent with the plaintiff's activities of daily living such as driving, "household responsibilities," and shopping.  (Tr. 19).  At the hearing, the plaintiff admitted to doing some shopping with her daughter, going to church, and visiting family. (Tr. 347, 350).  Elsewhere, she noted "light housework," cooking one meal a day for one hour, doing three hours of cleaning twice a week, two hours of laundry three times a week and getting outside every day, where she could walk about one-half mile.  (Tr. 85-89).  The ALJ also correctly noted that on the same date as the Kraftick opinion, Dr. Adams had signed insurance forms indicating that he expected his patient to be disabled for four to six months rather than permanently.  (Tr. 312).  Such an opinion does not support the requirement in the Social Security Act that a claimant be disabled for a period of 12 continuous months.  Therefore, the ALJ gave good reasons for discounting the treating physician's opinion.  Wilson v. Commissioner of Social Security, 378 F.3d 541 (6th Cir. 2004).

The Commissioner admits that a consultative physical examiner, Dr. Stephen Nutter, indicated that the plaintiff would have certain restrictions which the ALJ did

08-44  Brenda Jones

not include in the hypothetical question, such as never squatting and climbing, occasionally crawling, and no more than frequently bending or reaching above shoulder level, as well as working around unprotected heights and moving machinery. (Tr. 321). The Commissioner asserts that the jobs described by the VE do not involve any of these activities or exposures. A review of the Dictionary of Occupational Titles (DOT) shows that there is a job involving small products assembly at DOT § 706.684-022 and a sedentary inspecting position at § 715.684-094 which do not involve activities inconsistent with Dr. Nutter's restrictions. For this reason, and because the plaintiff has not raised the issue specifically, the court concludes that no useful purpose would be served by a remand in the present circumstances.

The plaintiff's other argument on appeal is that the ALJ did not consider her impairments in combination, but a review of the ALJ's decision shows that it was adequate in this regard. (Tr. 17). Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).

The decision will be affirmed.

This the 22nd day of October, 2008.

Signed By:

G. Wix Unthank 

**United States Senior Judge**